UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHEIK FRANCIS SMITH-BEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v ) | Case No. 1:11-cv-1204-TWP-MJD |
| ) | |
| MARK DODD, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REGARDING PENDING MOTIONS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on Defendant Mark Dodd's ("Chaplin Dodd") Motion for Summary Judgment, and Plaintiff Sheik Francis Smith-Bey's ("Smith-Bey") Motions for a Temporary Restraining Order. Smith-Bey is a prisoner currently incarcerated at the Pendleton Correctional Facility ("Pendleton"), a prison operated by the Indiana Department of Correction ("IDOC"). Chaplin Dodd is the Chaplain at Pendleton. The claims remaining in this action result from prior proceedings and are asserted against Chaplain Dodd, from whom Smith-Bey seeks injunctive relief and damages. For the reasons explained below, Chaplin Dodd's Motion for Summary Judgment (Dkt. 46) will be **GRANTED** and Smith-Bey's Motions for a Temporary Restraining Order (Dkts. 42 and 57), will be **DENIED**.

### I. LEGAL STANDARDS

**A.      Summary Judgment Standard**

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). The motion for

summary judgment in this civil rights action, as with any such motion, must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears "the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party demonstrates that there is no genuine issue of material fact, the non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. See *Harney,* 526 F.3d at 1104 (citing cases). The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *See Wollin v. Gondert,* 192 F.3d 616, 620 (7th Cir. 1999). The opposing party must "go beyond the pleadings" and set forth specific facts to show that a genuine issue exists, *id.,* at 621, and must do this not with conclusory statements or speculation, but only with appropriate citations to relevant admissible evidence. *Brasic v. Heinemann's Inc., Bakeries,* 121 F.3d 281, 286 (7th Cir. 1997). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372 (2007). The following statements are not properly included in an affidavit and should be disregarded: (1) conclusory allegations lacking supporting evidence, *see Abuelyaman v. Ill. State Univ.,* 667 F.3d 800, 812 (7th Cir. 2011); (2) legal argument, *see Pfeil v. Rogers,* 757 F.2d 850, 862 (7th Cir. 1985); (3) self-serving statements without factual support in the record, *Broaddus v.*

2

*Shields,* 665 F.3d 846, 856 (7th Cir. 2011); (4) inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.,* 924 F.2d 655, 659 (7th Cir. 1991); and (5) mere speculation or conjecture, *see Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999).

Smith-Bey has opposed the Motion for Summary Judgment (Dkt. 49), but his response is inadequate to create a genuine issue of material fact. Local Rule 56-1(b) requires a brief in opposition to a motion for summary judgment to include a section labeled "Statement of Material Facts in Dispute" which responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the non-moving party contends demonstrate that there is a dispute of fact precluding summary judgment. These facts must be supported by appropriate citations to admissible evidence. *See* Local Rule 56-1(e). *Pro se* litigants are not exempt from procedural rules. *Patterson v. Indiana Newspapers, Inc.,* 589 F.3d 357, 360 (7th Cir. 2009) ("We have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions . . . ."); s*ee also Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008); *Greer v. Bd. of Educ., of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *Members v. Paige,* 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced").

Smith-Bey has not filed the *Statement* required by Local Rule 56-1(b). His affidavit, moreover, is conclusory and would not be sufficient to create a genuine question of material fact. Additionally, his affidavit does not address several of the facts asserted by Chaplain Dodd. Smith-Bey's failure to properly oppose the motion for summary judgment with a statement of material facts in dispute supported by admissible evidence has a particular consequence, which is that he has admitted the truth of Chaplin Dodd's statement of material facts for purposes of this

Court acting on the motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56-1(f), of which Smith-Bey was notified. This does not alter the standard for assessing a Rule 56 motion, for the record must support summary judgment as a matter of law irrespective of whether the non-moving party has filed an opposing memorandum, *see, e.g., Van de Sande v. Van de Sande,* 2008 WL 239150 (N.D.Ill. 2008), but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

**B.     Applicable Law**

Smith-Bey alleges that Chaplain Dodd denied Smith-Bey's religious items and/or worship opportunities at Pendleton. Smith-Bey claims that Chaplain Dodd denied him the "opportunity to follow the practice of his religion" by refusing certain activities as well as items in Smith-Bey's possession, including a prayer rug, prayer oils, and prayer socks. Smith-Bey further claims that Chaplain Dodd violated IDOC policy related to religious services, and he requests that Chaplain Dodd comply with IDOC policy and Executive Directive 09-57.

Lawful "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Price v. Johnston,* 334 U.S. 266, 285 (1948)). Nonetheless, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979).

> Inmates' complaints that prison authorities have infringed their religious rights commonly include a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc *et seq.,* which confers greater religious rights on prisoners than the free exercise clause has been interpreted to do. See 42 U.S.C. §

4

> 2000cc–1; *Cutter v. Wilkinson,* 544 U.S. 709, 714–17, 125 S. Ct. 2113, 161 L.Ed.2d 1020 (2005). The plaintiff doesn't mention the Act, but he is proceeding pro se and in such cases we interpret the free exercise claim to include the statutory claim. *Ortiz v. Downey,* 561 F.3d 664, 670 (7th Cir. 2009).

*Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). The free exercise claim which can be discerned in Smith-Bey's complaint is treated as asserted pursuant to 42 U.S.C. § 1983, his complaint is likewise understood as asserting a claim pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Smith-Bey also claims that IDOC policy has been violated.

    **1.** **Free Exercise Claim.** Inmates retain First Amendment rights that are consistent with incarceration, and prison restrictions limiting or interfering with those rights must reasonably relate to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89 (1987).

> When officials assert such a concern to justify the curtailment of an inmate's religious exercise, we must consider four factors in determining whether the challenged restriction is constitutional: (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns." *Lindell v. Frank,* 377 F.3d 655, 657 (7th Cir. 2004) (citing *Turner,* 482 U.S. at 89-91, 107 S. Ct. 2254).

*Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

    **2.** **RLUIPA Claim.** Smith-Bey alleges that his religious practices have been impeded. The RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." *Cutter v. Wilkinson,* 125 S. Ct. 2113, 2114 (2005). The RLUIPA is designed to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the

government's permission and accommodation for exercise of their religion." *Id.* at 2122.

## II. MATERIAL FACTS

Smith-Bey is an adherent of Islam. He is a member of the Moorish Science Temple of America. As of November 19, 2012, Smith-Bey's religious preference on the IDOC's Offender Information System is listed as "Muslim/Islam."

On or around July 22, 2011, a prayer rug, two bottles of prayer oil, and prayer socks were confiscated from Smith-Bey. These items were deemed by prison staff to be in excess of the religious property permitted by prison policy. Smith-Bey already possessed at least one prayer rug at the time the other prayer rug was confiscated, and the restriction was made like any other offender property limitation. This policy is applied to inmates regardless of religious beliefs.

Prayer oils are available to all offenders at Pendleton through the facility commissary, regardless of religious belief or lack thereof. Each offender may personally possess no more than two ounces of prayer oil in his cell. No offender may purchase prayer oil from an outside vendor. Prayer oil is available only on commissary and restricted to two ounces at a time because its fragrant nature creates a black market in the facility for the oil. This has resulted in trafficking and other unauthorized offender activity. The oil's fragrant qualities are also capable of masking the odor of other contraband like tobacco or marijuana. Because the religious oil has the potential to create a facility black market and is capable of masking the odor of other contraband, it is considered a safety and security threat and is limited in origin and amount. Thus, although the prayer oil is not halal as Smith-Bey would prefer, prison authorities have a religion-neutral rationale for the restriction on origin. IDOC policy provides that offender religious property that represents a safety or security threat to the facility may be confiscated.

Smith-Bey had access to running water in order to wash his feet to prepare for worship

within his cell, but not with the frequency (five times a day) he wished. Prayer socks are used to offset situations in which the feet cannot be washed before prayer.

With respect to property confiscated as excessive, Smith-Bey had the option to have those items sent out to a location outside the facility under a gate release.

### III. DISCUSSION

The protections offered by the First Amendment are more limited than those extended under the RLUIPA. Although the RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc-5(7), traditional First Amendment jurisprudence "asks whether government has placed a substantial burden on the observation of a central religious belief or practice . . ." *Hernandez v. Comm'n of Internal Revenue,* 490 U.S. 680, 699 (1989). Therefore, "any claim that fails under RLUIPA will fail inevitably under the First Amendment's more stringent requirements." *Mark v. Gustafson,* 482 F.Supp.2d 1084, 1090 (W.D.Wis. 2006).

Because the free exercise clause allows states to enforce neutral laws of general applicability even when those laws significantly burden religious practices, *Employment Division Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 887 (1990), the clause is violated only when the government intentionally targets a particular religion or religious practice. *Sasnett v. Sullivan,* 91 F.3d 1018, 1020 (7th Cir. 1996), *vacated on other grounds*, 521 U.S. 1114 (1997). No contention of that nature is made by Smith-Bey, nor is there any evidence in the record which would support an inference that Chaplin Dodd or Pendleton authorities in general targeted adherents of Islam, members of the Moorish Science Temple of America, Smith-Bey in particular based on his association with Islam or with the Moorish Science Temple of America, or any religious practices of these groups. This dearth of evidence is fatal to Smith-Bey's free

exercise claim because "[t]o survive a motion for summary judgment, the nonmovant[ ] 'must make a showing sufficient to establish each essential element of their cause of action for which they will bear the burden of persuasion at trial.'" *Xiong v. Wagner*, 700 F.3d 282, 289 (7th Cir. 2012) (*quoting Billings v. Madison,* 259 F.3d 807, 812 (7th Cir. 2001)).

To prove a RLUIPA claim, a plaintiff bears the burden of establishing that defendant placed a substantial burden on the exercise of the plaintiff's religious beliefs. 42 U.S.C. § 2000cc-2(b); *Hernandez v. Commissioner,* 490 U.S. 680, 699 (1989). The statute itself does not expressly define what constitutes a "substantial burden," but the Seventh Circuit has stated that "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003); *see also Nelson v. Miller,* 570 F.3d 868, 878 (7th Cir. 2009).

Smith-Bey's implied RLUIPA claim fails at the outset because the summary judgment evidence does not support an inference that Chaplain Dodd or other Pendleton authorities placed a substantial burden on the exercise of Smith-Bey's religious beliefs. No reasonable trier of fact could conclude otherwise. There is no evidence in the record that the limitation on the amount of religious property Smith-Bey and other inmates could retain in their cells or the requirement that Smith-Bey and other inmates purchase prayer oil from the prison commissary rendered religious exercise "effectively impracticable."

Finally, alleged violations of IDOC policy are irrelevant to a § 1983 lawsuit. Only federal law provides the source for liability in a civil rights suit based on § 1983. *Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009). Only violations of one's constitutional rights are protected, not violations of state statutes or a state agency's policy. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th

Cir. 2003). Smith-Bey's claim of a violation of IDOC policy is not cognizable here.

## IV. MOTIONS FOR TEMPORARY RESTRAINING ORDER

Smith-Bey filed a motion for a temporary restraining order as this action was developing. A similar such motion was filed on May 6, 2013.

Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. See *New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1347 n.2 (1977).

To justify a preliminary injunction, Smith-Bey must show that he is "likely to succeed on the merits . . . ." *Judge v. Quinn,* 612 F.3d 537, 546 (7th Cir. 2010). As the discussion in Section I of this Entry demonstrates, Smith-Bey has not and cannot meet this burden.

Smith-Bey's Motions for a Temporary Restraining Order (Dkt. 42 and Dkt. 57) are therefore **denied.**

## V. CONCLUSION

The provision of religious services in prison is subject to legitimate concerns regarding security, safety, rehabilitation, institutional order, space, and resources. *See Mustafa Al-Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir. 1991) (both security and economic concerns are legitimate penological demands).

The Supreme Court has held that summary judgment is mandatory if there is no genuine issue as to any material fact for trial if, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The plaintiff must come forward with evidence of a specific factual dispute, evidence that would reasonably permit the finder of fact to find in plaintiff's favor

on a material question; otherwise, the court must enter summary judgment against the plaintiff. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994); *International Union of Operating Engineers v. Associated General Contractors,* 845 F.2d 704, 708 (7th Cir. 1988).

Smith-Bey has not come forward with evidence which would reasonably permit the finder of fact to find in his favor elements essential to his case and on which he will bear the burden of proof at trial. Specifically, Smith-Bey has failed to come forward with evidence sufficient to create a genuine issue of fact that Chaplin Dodd substantially burdened Smith-Bey in the exercise of his religious beliefs and practices or targeted his beliefs or practices because of his religion.

Chaplain Dodd's Motion for Summary Judgment (Dkt. 46) is **GRANTED**. Smith-Bey's Motions for a Temporary Restraining Order (Dkts. 42 and 57) are **DENIED.**

Judgment consistent with this Entry and with the Entry of July 27, 2012, shall now issue.

**SO ORDERED.**

Date: 09/25/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Sheik Francis Smith-Bey, #955755
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, Indiana   46064

Gary E. Helms
OFFICE OF THE INDIANA ATTORNEY GENERAL
grant.helms@atg.in.gov

Wade J. Hornbacher
OFFICE OF THE INDIANA ATTORNEY GENERAL
wade.hornbacher@dcs.in.gov